THE ANDREW ADAMS.

BOSTON TOW-BOAT CO. *v.* THE ANDREW ADAMS.

(*District Court, D. Massachusetts.* August 18, 1888.)

1. SALVAGE—COMPENSATION—ORGANIZED WRECKING COMPANY.
    It is of the utmost importance to commerce on the New England coast that the business of assisting vessels in distress should be undertaken and carried on by somebody with sufficient capital and enterprise to assist wrecked vessels, and to keep in readiness the necessary apparatus. stationed at different places where there is liability for its use for vessels in jeopardy and misfortune; and courts of admiralty should bear this in mind, and see that a liberal measure of salvage is awarded to a company undertaking to furnish such effectual means of assistance, when a salvage service has been undertaken by it, and successfully performed.

2. SAME—AMOUNT OF COMPENSATION.
    A schooner, valued with her cargo of coal and freight at $19,375, was stranded on the southerly coast of No Man's Land, in the district of Massachusetts, in a place where she was certain to go to pieces in case a storm occurred before she was got off, and where no vessel had ever been got off before. She was on a soft and shifting beach in the nature of quicksand, into which a wreck would sink and become imbedded. An organized wrecking company, at the request of the master and owners, undertook to get her off, and dispatched a number of powerful tugs, lighters, steam-pumps, and the

necessary men and wrecking gear, to her assistance. The services began on May 3d, and, with some intermission, continued. with no great danger to the salvors, but with all possible skill, until the 23d, when the efforts of the salvors turned out to be successful, and' the vessel was hauled off the beach, and towed into Martha's Vineyard, where repairs to the amount of $2,500 were made by the salvors. *Held*, that 50 per cent. of the value of vessel, cargo, and freight should be awarded in gross, without any addition for the repairs, which were deemed to be included in the award.

In Admiralty. Libel for salvage.

*L. S. Dabney* and *F. Cunningham*, for libelant.

*F. Dodge* and *E. S. Dodge*, for claimant.

NELSON, J., (*orally.*) In the case of the Boston Tow-Boat Company against the schooner Andrew Adams it appears that on the night of the 30th of April, 1887, the Andrew Adams ran ashore on the southerly coast of No Man's Land, and required assistance. By an arrangement with the Boston Tow-Boat Company, made by her master and owners, the libelant commenced the work of saving the vessel, and hauling her off the beach. The services commenced on the 3d of May, and continued, with some intermission, until the 23d, when the efforts of the tow-boat company turned out to be successful, and the vessel was hauled off the beach, and towed into Martha's Vineyard. It appears by the stipulation of the parties that the value of the vessel, cargo, and freight saved amounted to $19,375.

In the first place, it appears that the vessel was ashore at a place where she was certain to go to pieces in case any storm or bad weather should occur before she was got off. She was exposed to the open ocean. She was on a soft or shifting beach, (the shore being in the nature of quicksand,) and at a place where several vessels had been wrecked in former years; but no vessel had ever before been got off, the nature of the ground being such as to cause the wreck to sink, and become imbedded in the sand. And it also appeared that the vessel was so situated that it was impossible to relieve her without the assistance of apparatus of the most costly character. The ordinary service of men, unaided by powerful machinery would have been used by the company without avail, and it was essential to the preservation of the vessel that apparatus of the very best character and quality should be used. For effecting this service the libelants made use of tow-boats of a very considerable size, some of them of the largest and most powerful description, and also of steam-pumps of great capacity,—the whole amount in value, in proportion to the rescue, being very large.

In the second place, the element of danger to the apparatus is to be considered. There was certainly no evidence that this service was of a character to endanger lives, or afford a great deal of unusual hardship and discomfort to the men employed; and as to a portion of the machinery made use of, it does not appear that that was exposed to any particular danger; as, for instance, the tow-boats themselves were not exposed. But it does appear that some of the pumps of the tow-boat company were placed on board this vessel, and exposed to the hazard of a

storm, and, in case a storm had arisen, would undoubtedly have been lost. In regard to the amount of skill made use of, there was an attempt made on the part of the owners of the schooner to prove that the tow-boat company failed in the exercise of skill and good management in performing these services. I must confess that this defense does not impress me much. I have no doubt that Capt. Cook and Capt. Tower used all the skill which possibly could be used, under the circumstances; and I do not believe that they were negligent or failed in taking such precautions as the circumstances at the time seemed to demand. Certainly, a great portion of their efforts was unsuccessful, and, of necessity, experimental. Various experiments were tried, and most of them did not succeed. Still, they exercised their best judgment, under the circumstances, in a case of great peril; and I have no doubt they used all the skill that any other persons engaged in this business could possibly have used. Of course, after the event, it is, perhaps, easy to perceive how some things might have been different, but, at the time these efforts were made, it seems to me very plain that these gentlemen exercised as much skill as it was possible to apply to the extraordinary service in which they were engaged; therefore, I hold that the services were skillfully, as well as successfully, performed.

It was also claimed that the tow-boat company was negligent, and failed in their duty towards this vessel, for which the salvage should be diminished, by having left the vessel for several days to go to the rescue of another vessel, the Miranda, which was on shore in Vineyard sound. In regard to that, it seems to me that certainly ought not, under the circumstances, to be alleged against the tow-boat company, so as to make any material reduction in their salvage. The situation of the Andrew Adams was such that it was extremely doubtful whether she could be got off, and in the mean time another vessel was demanding assistance, and situated where there was a greater probability of success; and it would seem that the tow-boat company would have been negligent in the general performance of its duties if it had seen fit to devote all its apparatus to the Andrew Adams, and had taken no account of the other vessel, which was on shore, and needed assistance also. Though it undoubtedly exposed the Andrew Adams to some danger on account of the lapse of time, because a storm might have come up any moment which would have brought about her entire destruction, yet, in point of fact, that did not happen, and therefore I am not at all inclined to look upon that as any dereliction which should diminish the salvage to be awarded in this case. Then the court should especially take into consideration the business which is carried on by this tow-boat company. It has procured apparatus of the most expensive character, which is used almost entirely for the purpose of saving vessels wrecked on this coast. It is of the utmost importance to commerce on our coast that such a business should be undertaken and carried on by somebody, with sufficient capital and sufficient enterprise, to assist wrecked vessels. This company has seen fit to come forward and furnish this capital, and keep in readiness the apparatus, stationed not merely at Boston, but also stationed at other

placés on the coast, where there is liability for its use for vessels in jeopardy and misfortune. It appears that there was not in this vicinity, certainly not on the Massachusetts coast, any company organized with sufficient force to undertake this important service; certainly, there is no company in existence this side of New York which would have been capable, as I understand the situation, of getting this vessel off. Therefore I think the court should bear that in mind, and see that a liberal measure of salvage is awarded to a company undertaking and performing successfully a service of this kind.

Now, it also appears that, after this vessel had been got off the beach and taken into Vineyard haven, the tow-boat company made a large expenditure in repairing her. There was an attempt made to cast suspicion upon this expenditure, and to show that these repairs were voluntary, and not asked for, nor assented to on the part of the owners; but I think the attempt failed. I think it is clear, from all this evidence, that the owners assented to the repairs. It was done, perhaps, with some formal objection, for the purpose of saving their rights, without any real opposition to the expenditure; certainly, it was in their power to stop the repairs at any moment, but they never exercised it. They saw this go on with, certainly, no positive objection—some grumbling and scolding about it—but nothing that I regard as depriving the tow-boat company of the right to have this considered on a matter of salvage. The amount expended, as appears by the bills rendered, was somewhere in the vicinity of $2,500, and is to be included in the salvage award which I propose to make.

It appears, as I have said, that the entire amount of property saved amounted to $19,375,—vessel, cargo, and freight. The libelant claims one-half of this as salvage. I think the claim is not an unreasonable one; and, with the understanding that this is to include the expenditure made by the tow-boat company after the arrival of the vessel at Vineyard haven, that amount is awarded. This really amounts to an award of one-third of the whole amount of property saved, with the addition of the repairs. The amount of the salvage which I have fixed upon is one-half of $19,375, to be apportioned upon the vessel, cargo, and freight.